UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INNOVATOR ENTERPRISES, INC., ) | |
| ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 13-0581 (JDB) |
| ) | |
| B. TODD JONES, DIRECTOR, ) | |
| BUREAU OF ALCOHOL, TOBACCO, ) | |
| FIREARMS AND EXPLOSIVES, ) | |
| ) | |
|     Defendant ) | |
| ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Defendant, B. Todd Jones, Director, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF),[1] respectfully files this opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Pl's Cross-Motion," ECF No. 12). In its Reply and Cross-Motion, Plaintiff claims that FTB's determination should not be afforded Chevron[2] deference, that FTB made no factual determinations because it disregarded relevant data, did not provide a reasoned explanation, and did not follow its own Standard Operating Procedure (SOP). Plaintiff's claims are without merit and should be dismissed.

---

[1] The classification of Plaintiff's submitted device was performed by the Firearms Technology Branch (FTB) at ATF. To avoid confusion, Defendant will generally refer to FTB when describing the agency's actions that pertain to this case.

[2] See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).

**ARGUMENT**

A.      **FTB's Classification is Entitled to <u>Chevron</u> Deference**

Defendant acknowledges that the process that FTB employed in its classification letter of Plaintiff's submitted device was not the result of a formal adjudication.  The process used was not based upon notice-and-comment rulemaking and FTB did not conduct any type of formal hearing on the matter.  However, this does not lead to the conclusion that Plaintiff seeks:  that informal adjudications may not be given <u>Chevron</u> deference.  <u>See</u> Pl.'s Cross-Motion at p. 14 ("deference is accorded to an agency's interpretation *only* when it takes the form of a regulation or formal adjudication") (emphasis added).  In support of its conclusion, Plaintiff cites to the Supreme Court decision in <u>Christensen v. Harris Cnty.</u>, 529 U.S. 576, 587 (2000), wherein the Court stated that an interpretation in an opinion letter did "not warrant <u>Chevron</u>-style deference." However, the section to which Plaintiff cites in <u>Christensen</u> (located in Part III of the opinion) is not binding precedential law, because that section did not have the support of a majority of justices.  <u>See</u> 529 U.S. at 589 (Scalia, J., concurring in the judgment, but not with Part III of the opinion).

Plaintiff also cites to <u>United States v. Mead Corp.</u>, 533 U.S. 218 (2001), where the Court applied a lower standard of deference than <u>Chevron</u> to a classification ruling by the U.S. Customs Service.  <u>See</u> 533 U.S. at 234 (the letters were not placed "outside the pale of any deference whatever"; Court applied *Skidmore*[3] deference).  However, the year following <u>Mead</u>, the Court issued <u>Barnhart v. Walton</u>, 535 U.S. 212 (2002), where the pendulum swung back towards granting <u>Chevron</u> deference when an agency arrives at decisions "through means less formal than 'notice and comment' rulemaking." <u>Id</u>. at 221.  As the Supreme Court stated,

---

[3] <u>See</u> <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944).

the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time [may] indicate that *Chevron* provides the appropriate legal lens through which to view the legality of [a disputed] Agency interpretation" of its authorizing statute.

Id. at 222.

Since the Barnhart decision, this Circuit has recognized Chevron deference to private letter rulings issued by an agency.  See Mylan Labs., Inc. v. Thompson, 389 F.3d 1272, 1280 (D.C. Cir. 2004).  As such, the fact that FTB's determination was an informal adjudication does not automatically negate the possibility of Chevron deference.  Instead, several factors warrant granting it.  First, the statutory scheme is complex.  The statute at issue, 18 U.S.C. § 921(a)(24), is part of the larger Gun Control Act of 1968 (GCA), codified as Chapter 44 of Title 18, U.S. Code, which "establishes a detailed federal scheme governing the distribution of firearms." Printz v. United States, 521 U.S. 898, 902 (1997).  Additionally, the National Firearms Act (NFA), which also regulates *inter alia* silencers, is a taxing scheme that falls within the Internal Revenue Code (Title 26, U.S. Code).  Adding another layer of complexity is the mechanics of how silencers operate and how the physics behind them squares with § 921(a)(24)'s statutory language.  Finally, the classification of any individual silencer is not taken in a vacuum, but rather looked and compared against previously submitted samples.  See Administrative Record (AR) at 14 ("FTB looks specifically for physical characteristics that are consistent with those of known silencers").  As a downstream consequence, the classification of any one particular silencer becomes a historical reference for the classification of future silencers.  Hence, when FTB makes its decision, it explains its rationale for the decision in a signed letter, which is more than just a conclusory explanation.  Compare Fox v. Clinton, 684 F.3d 67, 73-74 (D.C. Cir. 2012) (explanation in paragraph one of the "Betancourt letter") with AR 14-15 (explanation in

FTB letter). Therefore, because of all these factors, Chevron deference should apply to FTB's classification of Plaintiff's submitted device.[4]

Under the Chevron framework, a court's review occurs in two steps. The first step is determining whether the statute itself is unambiguous. In Plaintiff's argument on the meaning of § 921(a)(24), it commits a mortal sin of statutory construction by changing the language to suit its own ends. See Public Citizen, Inc. v. Rubber Mfrs. Ass'n, 533 F.3d 810, 816 (D.C. Cir. 2008) ("a legislature says in a statute what it means and means in a statute what it says there"). In its Cross-Motion, Plaintiff states "the statute classifies a device as a silencer if it 'diminishes' the report of a firearm." Id. at 13 (emphasis added). However, at no point in § 921(a)(24) does Congress ever use the word "diminishes," which is a present tense "action" verb. Instead, Congress chose the present participle "diminishing," just as it used "silencing" and "muffling," all of which connote – in the context of following the word "for" and used in the disjunctive – that the device in question must be viewed in light of its *purpose*, not its effectiveness. See United States v. Crooker, 608 F.3d 94, 97 (2d Cir. 2010) (the "ordinary connotation of the word ['for'] is one of purpose"). Defendant maintains that Congress used unambiguous language in the statute that results in a purpose-based test, which would complete the Chevron analysis. However, as the Step One analysis does not answer whether Plaintiff's particular submitted device (which the Court did not have the benefit of examining) is in fact a silencer or not, the analysis proceeds to Step Two.

---

[4] The Court's deference in this case on FTB's classification of Plaintiff's submitted device would be consistent with several court decisions deferring to ATF's expertise in other areas of firearms-related determinations. See e.g., Springfield, Inc. v. Buckles, 292 F.3d 813 (D.C. Cir. 2002) (deferring to ATF's interpretation of "sporting purpose" test for firearms imports, regardless of whether *Chevron* or *Skidmore* deference is used); Farmer v. Higgins, 907 F.2d 1041, 1045 (11th Cir. 1990) (interpreting 18 U.S.C. § 922(o)); Gun South, Inc. v. Brady, 877 F.2d 858, 864 (interpreting regulations on importation of firearms); Modern Muzzleloading v. Magaw, 18 F.Supp. 2d 29, 35-36 (D.D.C. 1998) (deferring to ATF's classification of a firearm).

Under the second step "[i]f Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are … manifestly contrary to the statute." Fox, 684 F.3d at 76 (quoting Chevron, 467 U.S. at 843-844).

**B.    Defendant's FTB Made Factual Determinations, Which It Explained in the Decision Letter.**

The balance of Plaintiff's argument focuses on how FTB actually conducted its analysis of the submitted device and the conclusions reached in the decision letter.  The first point to address in Plaintiff's argument is that contrary to Plaintiff's assertions, the terms of the FTB's *Evidence Examination of Silencers* SOP (Evidence SOP or SOP)[5] do not mandate Sound Impulse Reduction Testing (SIRT).  See Pl's Cross-Motion, Part II.D.

*1.    Neither FTB's own SOP nor the APA mandate that SIRT be used when classifying silencers.*

As both the decision letter note and Plaintiff argues, FTB does have the capability to use state-of-the-art sound monitoring equipment.  Furthermore, the SOP does require procedures to be followed (using the language "will") during the SIRT testing.  See Evidence SOP, at para. 5.0 et seq.  However, Plaintiff failed to read the operative language of the SOP at para. 4.3 "Internal Examination."  Specifically, the paragraph reads that the Firearms Enforcement Officer (FEO) "*may* disassemble the [device] for internal examination" (emphasis added).  Once disassembled, the "FEO *will* document internal features, physical characteristics, and any other information which directly affects the classification of the [device].  These document internal features, physical characteristics, and other information *may* include: … Sound Impulse Reduction Testing." Id. (emphasis added).  When read in context, the SOP is clear that the FEO has the

---

[5] This Evidence SOP was included as Exhibit 2 to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (Def's Motion).  ECF No. 9.

discretion to choose among the relevant internal features that affect classification, which may or may not include SIRT.[6]  However, *if* the FEO proceeds with the SIRT, then those procedures to be used are mandatory.[7]

The next question to ask (which Plaintiff argues in Part II.A of its Cross-Motion) is whether FTB *should* be testing all of the submitted devices with SIRT as part of the "relevant data" to be used in making a decision.  Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  However, the answer to this depends on how the question is framed:  whether the device is *effective* ("diminishes" the firearm report) or whether it is designed or used for a *purpose* ("for … diminishing" the firearm report).  As argued above, Congress used "for … diminishing" as the operative language in the statute, so the effectiveness is not a relevant data point to consider.

Argued another way, Plaintiff's proposed interpretation of § 921(a)(24) would lead to absurd results because the focus would solely be on the effectiveness of a device (does it *actually* diminish the report).  By way of analogy, consider a pillow.  Notwithstanding Hollywood's portrayal of pillows as being very effective as a silencer,[8] a pillow could be used to some extent to silence, muffle, or diminish the report a firearm.  Whether the pillow is made of foam or feathers, placing it against the muzzle would cause some of the escaping gases to get trapped and would absorb some of the sound energy.  Because it *could* be an effective silencer, then Plaintiff's interpretation would lead to the absurd conclusion that pillows were silencers under the definition of § 921(a)(24), thus requiring a special NFA license to manufacture or possess

---

[6] Paragraph 4.2 of the SOP provides similar language for the external features of the device.

[7] Because the SOP is generally used for evidence for criminal proceedings, the mandatory nature of the procedures (once used) helps establish their credibility for forensic purposes.

[8] See e.g., "Payback" (1999), starring Mel Gibson, where his character (Porter) uses a pillow placed against the muzzle of a revolver to silence the report as he shoots an enemy.

them and requiring the payment of a tax. Such a result, obviously, was not the intent of Congress in enacting the GCA, but that is the natural conclusion when an effectiveness-based definition is used. On the contrary, FTB's interpretation does not lead to such results because a general *purpose* of the pillow is not to be a firearms silencer; any silencing/muffling/diminishing properties it possesses are incidental to its actual purpose.[9]

    2.    *The decision by FTB was logical and rational, based upon the relevant data it examined.*

Plaintiff argues, in Parts II.B and II.C of its Cross-Motion, that FTB gives no discernible standard for determining whether devices are firearms, evidenced by the fact that its decision letter that does not mirror the language in FTB's own SOP. As a preliminary matter, it is noted that the Courts have set the minimum standards by which agency decisions must be based. "The agency's statement must be one of 'reasoning'; it must not be just a 'conclusion'; it must 'articulate a satisfactory explanation' for its action." Butte Cnty. v. Hogen, 613 F.3d 190, 194, 392 U.S. App. D.C. 25 (D.C. Cir. 2010) (internal quotations omitted). "This does not mean that an agency's decision must be a model of analytic precision, though an agency's explanation must minimally contain 'a rational connection between the facts found and the choice made.'" Dickson v. Sec'y of Defense, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). While FTB's letter may not be a model of clarity, it does meet the minimum standards required under Butte Cnty. and Dickson. The letter recites the statutory definition from § 921(a)(24), the method by which a FEO analyzes a submission, a non-exhaustive list of components that have been used in the past and which are indicative of silencers, and the results of the analysis. FTB further explained why the SIRT was

---

[9] This interpretation still allows for the possibility that a given criminal may actually use a pillow to silence a firearm during the commitment of a crime, since the pillow *as used*, would then be "for silencing, muffling, or diminishing" the report of the firearm.

not conducted and gave advice to Plaintiff on how it may re-configure its device so to potentially avoid the silencer classification.

This FTB decision letter is a far cry from the "Betancourt Letter" that gave short-shrift, uncited, and conclusory statements in the Fox case. *See supra* at 3. Furthermore, the letter has the requisite "rational connection between the facts found and the choice made." The FEO here found that the submitted device had three of the enumerated features (end cap, ported inner tube and expansion chamber) that are consistent with known silencer devices. ATF uses a "purpose" based interpretation of § 921(a)(24) and found that those features have a purpose (even if not the purpose) "for silencing, muffling, or diminishing" the report of a firearm. Based upon that analysis, FTB's rational conclusion was that Plaintiff's device was a silencer.

While "the list enumerated in the Classification Letter [may] differ[] from the lists of characteristics set forth in [the Evidentiary SOP]," Pl's Cross-Motion at p. 18, this is partially because the letter states "[t]hese characteristics include (but are not limited to):" and then proceeds to list six of the characteristics. See A.R. 14. In reviewing the SOP, paragraph 4.2.1 lists three external features to be potentially examined, while paragraph 4.3.2 lists six internal features. See Def's Motion at pp. 7-8. The letter combined the external features of "front end cap" and "rear end cap" into just "end caps." See A.R. 14. The other external feature in the SOP is "outer tube or body," which was not listed in the letter; however, if it had been listed, Plaintiff's device (as well as likely any other submission) would have contained this feature because basically any device would need some form of an outer body to hold its components. For internal features, the letter uses "sound dampening material" instead of "baffling material" (listed in the SOP), although these are effectively the same. See Def's Motion at p. 8. The letter also does not list "bleed holes," although such holes are the "ports" in the listed "ported inner

tube." Finally, the letter does not list "wipes."[10]  Id.  Importantly, though, whether the list in the classification letter had mirrored the SOP's language or not, the FTB analysis would have been the same, and Plaintiff was not prejudiced by any of the differences between the semantics of the letter and the SOP.[11]  For example, Plaintiff's device did not include wipes as part of its design, so the absence or inclusion of wipes as a possible internal feature of known silencer characteristics in the decision letter is moot, because FTB does not use a "scoring system" or percentage of known features system to make the final conclusion (which appears to be what Plaintiff is advocating in its argument at Part II.C of its Cross-Motion at p. 19).  As discussed below, this lack of a "scoring system" is essential for FTB to carry out its classification procedures.

Firearms technology is not a static object.  It changes over time, as indicated here in footnote 10 (use of wipes in silencers more prevalent in Vietnam War designs, but have fallen into disfavor in more modern designs.)  Yet some devices (especially amateur ones that are collected for evidence of a crime) may still be relatively simple, such as sound dampening material shoved inside an outer tube and attached to a firearm (which would be two features out of the nine listed).[12]  All this requires FTB to have flexibility in its classifications.  It uses

---

[10] "Wipes are inner dividers intended to touch the bullet as it passes through the suppressor, and are typically made of rubber, plastic or foam. Each wipe may either have a hole drilled in it before use, a pattern stamped into its surface at the point where the bullet will strike it, or it may simply be punched through by the bullet. Wipes typically last for a small number of firings (perhaps no more than five) before their performance is significantly degraded. While many suppressors used wipes in the Vietnam War era, most modern suppressors do not use them as anything that touches the projectile has significant accuracy implications.  Equally important is all 'wipes' deteriorate quickly and require disassembly and spare parts replacement."  http://en.wikipedia.org/wiki/Suppressor (retrieved September 9, 2013).

[11] The SOP does list other features that may be noted during an examination, such as manufacturer, serial numbers, etc., but these other features have no bearing on whether the physical characteristics will lead to a conclusion that this device is or is not a silencer.

[12] Returning to the pillow analogy, Porter's "pillow silencer" in the movie "Payback" would only have one feature because the sound dampening material (baffling material) would not be contained within an outer body or shell.

features of historically known items,[13] then compares them with the features of the current submissions, bearing in mind that not all features may be used in any given submission. All these data points are then viewed in the light of the standard of the statutory definition to arrive at a conclusion. The method may not be what Plaintiff would have preferred, but this method reflects the realities of the technology involved, and is a rational and logical approach to implementing ATF's mandate to enforce the GCA and NFA. Hence, *Chevron* deference is appropriate here. In addition, FTB's determination should stand irrespective of such deference because the classification of Plaintiff's submitted device was not arbitrary, capricious or otherwise contrary to law.[14] See 5 U.S.C. § 706(A).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss this action for failing to state a claim upon which relief may be granted, or in the alternative, to grant summary judgment in favor of Defendant.

---

This pillow would only become a silencer once Porter used it "for silencing, muffling, or diminishing" the report (i.e., its purpose).

[13] These are the "reference materials" and "reference silencers" described in paragraphs 4.2.6, 4.2.7, 4.3.3, and 4.3.4 of the SOP.

[14] In the event this Court determines that ATF's testing procedure was flawed, Defendant contends that the appropriate remedy is not to declare that Plaintiff's device is not a silencer under § 921(a)(24), but rather to remand the decision to ATF for further proceedings consistent with the Court's guidance. To simply change ATF's conclusion and determine that the device was not a silencer would be to substitute the Court's judgment for that of the agency. See e.g. Vermont Yankee Nuclear Power Corp. v. NRDC, Inc., 435 U.S. 519, 549 (1978); Tripoli Rocketry v. BATFE, 437 F.3d 75, 84 (D.C. Cir. 2006). See also Fox, 684 F.3d at 80 (where "sensitive issues [are] lurking … beyond the ken of the Court," the appropriate measure is to remand for further consideration).

        Respectfully submitted,

        RONALD C. MACHEN JR.
        United States Attorney
        D.C. Bar #447889

        DANIEL F. VANHORN
        Chief, Civil Division
        D.C. Bar #924092


        By: */s/ Marian L. Borum*
        MARIAN L. BORUM
        Assistant United States Attorney
        D.C. Bar #435409
        555 Fourth Street, N.W.
        Washington, DC 20530
        Telephone:  (202) 252-2510
        Facsimile:  (202) 252-2599
        Marian.L.Borum@usdoj.gov


Of Counsel:

Mark A. Vetter
Senior Attorney
Office of Chief Counsel (Litigation)
Bureau of Alcohol, Tobacco, Firearms & Explosives
United States Department of Justice