UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INNOVATOR ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-0581 (JDB) |
| | ) | |
| B. TODD JONES, DIRECTOR, | ) | |
| BUREAU OF ALCOHOL, TOBACCO, | ) | |
| FIREARMS AND EXPLOSIVES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff, Innovator Enterprises, Inc., and hereby submits, through counsel, its Reply to Defendant's Opposition to Plaintiff's Cross Motion for Summary Judgment. For the reasons that follow, and as stated in Plaintiff's Statement of Points and Authorities in Support of Plaintiff's Cross Motion for Summary Judgment, and in Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment ("Pl. S.J. Mem."), the agency's decision must be reversed and set aside.

**I.    NO DEFERENCE IS DUE UNDER *CHEVRON* TO FTB'S DETERMINATION.**

Defendant's contention that this Court should defer under *Chevron* to FTB's Classification Letter is misplaced. That contention is undermined even further by Defendant's own inconsistent arguments regarding application of *Chevron*.

First, Defendant condemns Plaintiff's citation to *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) for the proposition that opinion letters and similar guidance (as opposed to formal adjudications and notice-and-comment rulemakings) do not warrant *Chevron*-style

1

deference. Def. Reply 2; *see* Pl. S.J. Mem. 14 (quoting *Christensen*). Defendant asserts that the quoted portion of *Christensen*, from Part III of the opinion, "is not binding precedential law, because that section did not have the support of a majority of justices." Def. Reply 2. That contention is plainly wrong. Although Justice Scalia did not join in Part III, it was part of the Opinion of the Court that was joined by a majority of the Justices.[1] Justices Thomas, Rehnquist, O'Connor, Kennedy, and Souter make five; adding Justice Scalia would have made six.

*Barnhart*[2] and *Mylan Labs*,[3] relied on by Defendant, do not establish a rule contrary to *Christensen* and later authorities. In *Barnhart*, the policy in question was embodied in formal regulations issued after notice-and-comment rulemaking and, even before that rulemaking, had been the agency's longstanding interpretation of the statute at issue. *Barnhart*, 535 U.S. at 221. Here, Defendant's contention is that the ostensible "purpose" of a device, though disavowed by the submitter, and regardless of whether the device actually diminishes a firearm's report, determines whether the device is a silencer. There is neither a regulation,[4] a formal adjudication, nor a longstanding interpretation by the agency that this subjective "purpose" test constitutes the definition of a silencer. Instead, this novel position, which is never even mentioned in the Classification Letter, is a classic "post hoc rationalization of counsel." *KN Energy, Inc. v. FERC*, 968 F. 2d 1295, 1303 (D.C. Cir. 1992).

---

[1] *See Christensen*, 529 U.S. at 577 ("THOMAS, J., delivered the opinion of the Court, in which REHNQUIST, C.J., and O'CONNOR, KENNEDY, and SOUTER, JJ., joined, and in which SCALIA, J., joined except as to Part III. SOUTER, J., filed a concurring opinion, *post*, p. 589. SCALIA, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 589. STEVENS, J., filed a dissenting opinion, in which GINSBURG and BREYER, JJ., joined, *post*, p. 592. BREYER, J., filed a dissenting opinion, in which GINSBURG, J., joined, *post*, p. 596.").
[2] *Barnhart v. Walton*, 535 U.S. 212 (2002).
[3] *Mylan Labs v. Thompson*, 389 F.3d 1272 (D.C. Cir. 2004).
[4] The ATF regulation defining "silencer" is virtually a word for word repetition of the statutory definition. 27 C.F.R. §478.11. Had ATF believed there were significant gaps in the statutory definition which needed filling in, it might have taken the opportunity to do so by regulation. Silencers have been regulated by ATF and its predecessors since 1934- nearly 80 years.

*Mylan Labs* involved an extraordinarily complex legal situation in which the FDA had given final approval to an abbreviated new drug application (ANDA) for a generic manufacturer of a drug (Mylan) to market a drug patented by a different manufacturer. The original patentee was a day late in contesting that decision for purposes of an automatic stay, the federal court in Vermont found that the ANDA approval infringed the original patent and enjoined the generic manufacturer from selling it, that case was appealed and remained pending, and the FDA granted a six-month period of pediatric marketing exclusivity to the original patentee. *Mylan Labs,* 389 F.3d at 1277.  The case involved the interaction between:

> three separate statutory provisions: (1) 21 U.S.C. § 355(j), a provision of the 1984 Hatch–Waxman Amendments to the Federal Food, Drug, and Cosmetic Act (FDCA), which authorizes a drug manufacturer to submit an ANDA to the FDA to obtain approval of a generic version of a previously approved drug; (2) 21 U.S.C. § 355a, a 1997 amendment to the FDCA, which authorizes an extra six-month "pediatric exclusivity" period following expiration of a drug patent for a patent holder that has satisfactorily conducted pediatric testing of its drug upon the FDA's request; and (3) 35 U.S.C. § 271(e)(4), a patent statute, also enacted in the Hatch–Waxman Amendments, which sets out the exclusive remedies available in a patent infringement action.

*Id*. at 1274-75.  The FDA resolved the matter by letter, it is true, but it is equally true that this mare's nest could not possibly have been resolved by notice-and-comment rulemaking, or even in all likelihood (because of the short time frame) by formal adjudication.  As the D.C. Circuit observed, "application of the various statutory provisions results in conflicting effective dates for Mylan's ANDA." *Id.* at 1280.  In addition, "after the Vermont district court's finding of patent validity, Mylan's paragraph IV ANDA certification was at variance with the legal reality," and due to the late filing of the infringement action, "the FDA was left with a statutory gap to fill."

*Id.* at 1281. Consequently, "the FDA was called upon to construe the statutes so as to resolve these two conflicts."[5] *Id.*

*Fox v. Clinton*, 684 F.3d 67, 73-74 (D.C. Cir. 2012), cited by Defendant (Def. Reply at 3), shows quite conclusively why *Chevron* deference should not be accorded to the informal, utterly conclusory Classification Letter in the case at bar. In *Fox*, the D.C. Circuit refused to apply *Chevron* deference to an informal determination letter issued by the State Department. After discussing *Chevron* principles, it observed:

> We owe no deference to the Department's interpretation of its own regulations covering applications for CLNs, because there are no agency regulations at issue in this case. [citation omitted]. . . . This case involves nothing more than the agency's interpretation and application of the [governing statute] in an informal adjudication.

*Id.* at 76. The same is true in the case at bar. The D.C. Circuit went on to state that:

> It is clear that "not all statutory interpretations by agencies qualify for [*Chevron*] deference." *Pub. Citizen, Inc. v. U.S. Dep't of Health & Human Servs.*, 332 F.3d 654, 659 (D.C.Cir.2003) (citations omitted). The Supreme Court has clarified that "[d]eference in accordance with *Chevron* ... is warranted only 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.'" *Gonzales [v. Oregon]*, 546 U.S. [243] at 255–56 [(2006)] (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001)).

*Id.* Here, again, FTB's letter was not a rule with the force of law.

The Court then held that "The Department's Betancourt Letter Is Not Entitled to Chevron Deference." *Id.* at 77. It went on to distinguish, on grounds similar to those stated by Plaintiff

---

[5] The Court therefore gave *Chevron* deference to the letter decision, "as we have previously done on at least one other occasion," citing a single case from fourteen years previously. *Id.* at 1280.

above, the vastly more complex, precedential, reasoned, well-explained and authoritative decisions in *Barnhart* and *Mylan*. *Id*. at 77-78. In cases like *Barnhart* and *Mylan*:

> [T]he reviewing courts deferred to agency interpretations of statutes within their domains of delegated authority, because the challenged interpretations satisfied the factors laid out in *Barnhart*; and the agency interpretations were clearly intended to have general applicability and the force of law. The resulting actions were thus easily subject to meaningful judicial scrutiny, because the agency decisions were thoroughly explained.

*Id*. at 78. The court noted that "We cannot say the same of the Betancourt Letter, particularly because there is nothing in it to give deference to," citing its short, conclusory nature, unsupported by citations or references. *Id.*

Nothing remotely like the well-reasoned, authoritative determinations in *Barnhart* or *Mylan*, supported by proper citations, is involved in the case at bar. The question here is whether the Stabilizer Brake is a "device for silencing, muffling, or diminishing the report of a portable firearm . . . ." The Classification Letter relies, without explanation, on a list of six features "consistent with" being a silencer, but does not say whence those features are derived. It does not explain the number of features that must be present, or the weight to be given them. It does not offer any reasoning as to why three of the six features allegedly suffice. It does not say why FTB refuses to use the sound testing equipment at its disposal. It cites no general test, precedents, or principles on which it relies. It provides no reasoned explication or interpretation of the statute. It cites no regulations having the force of law, or any guidance or manuals. No expertise in reconciling conflicting statutes the agency is charged with administering is involved. Instead, this is the paradigmatic case of informal, unexplained, unsupported agency action to which *Chevron* does ***not*** apply.

Furthermore, Defendant himself presents conflicting arguments regarding which prong of *Chevron* applies (that is, whether or not the statute has spoken to the precise matter at issue, or whether it is ambiguous). In his opening brief, Defendant opines that the first prong of *Chevron* is dispositive:

> Clearly, then, Congress has directly spoken to the precise question at issue, and the Stabilizer Brake falls within the definition of a silencer. Therefore, in accordance with *Chevron*'s first analytical step, the Court should give effect to the expressed intent of Congress and the Agency should be granted summary judgment.

Def. Mem. 14; *see also id*. at 13 ("Under *Chevron*'s first analytical step, Plaintiff's Stabilizer Brake is a silencer.").

In his Reply Brief, however, after stating his belief that the statute employs a "purpose" test, Defendant expressly asserts that the first prong of *Chevron* is **not** dispositive: "However, as the Step One analysis does not answer whether Plaintiff's particular submitted device (which the Court did not have the benefit of examining) is in fact a silencer or not, the analysis proceeds to Step Two." Def. Reply 4. Defendant thus argues that the Stabilizer Brake is unambiguously a silencer under the first prong of *Chevron* and also that it is not.

A final reason for rejecting *Chevron* deference in this case is that in making its determination the agency did not rely on the "purpose" test that Defendant now advances in his brief. *See* Part II, below. As the Supreme Court has succinctly stated, regarding *Chevron* deference under such circumstances:

> [T]he Secretary contends that [the agency's interpretation] is entitled to deference under [*Chevron* and other cases]. We have never applied the principle of those cases to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice. To the contrary, we have declined to give deference to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question, on the ground that "Congress has delegated to the administrative official

6

> and not to appellate counsel the responsibility for elaborating and enforcing statutory commands." *Investment Company Institute v. Camp,* 401 U.S. 617, 628 (1971); cf. *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 (1962) ("The courts may not accept appellate counsel's *post hoc* rationalizations for agency [orders]").

*Bowen v. Georgetown University Hospital* , 488 U.S. 204, 212 (1988).  Because the arguments now advanced by the agency in litigation are not expressed in the Classification Letter, no *Chevron* deference should be afforded them.

## II. DEFENDANT'S LINGUISTIC ARGUMENT THAT A DEVICE IS A SILENCER BASED ON ITS OSTENSIBLE "PURPOSE" MUST FAIL.

In his Reply, Defendant again contends that the word "for" in the statute denotes purpose, and therefore only the purpose of a device (whether it is "for" diminishing the report of a firearm) rather than its actual functioning is dispositive. Def. Reply 4.  Defendant goes so far as to argue that the "effectiveness is not a relevant data point to consider."[6]  Def. Reply 6.  This interpretation suffers from at least four defects.

First, the word "for" does not require a reviewing court to look exclusively at the purpose or intent of a device.  The authoritative *Webster's New International Dictionary* (unabridged) (2d ed. 1958) ("Webster's Second"), in its primary definition of the word "for",[7] defines it as "Indicating the *end* with reference to which anything *acts, serves*, or is done; as….having as goal

---

[6] Defendant argues that Plaintiff's interpretation of § 921(a)(4) "would lead to absurd results" by focusing "solely" on the effectiveness of a device.  Def. Reply at 6.  Defendant then argues that because a pillow "could be an effective silencer, the Plaintiff's interpretation would lead to the absurd conclusion that pillows were silencers" under the statute. *Id.*   Plaintiff has never argued that effectiveness  is the "sole" factor to be considered in determining whether a device is a silencer.  But it is a relevant and highly important factor.  Reasonable, practical persons could agree that in defining silencer (and by using the term "device") Congress had in mind silencers that attach to the end of the barrel of a firearm, and that are designed to, and do in fact, silence, muffle, or diminish the report of the firearm.  Defendant is the party that has adopted, at least for this litigation, a test that relies "solely" on only one factor, namely "purpose" ("effectiveness is not a relevant data point to consider"—Def. Reply at 6).  Under Defendant's interpretation, if someone marketed a pink silk ribbon to tie in a bow around the circumference of  the barrel, and its stated "purpose" was to diminish the report (despite the fact that it could not possibly do so and did not do so) that pink ribbon would be a silencer under the statute.

[7] Definition 2a, which follows an obsolete definition 1.

or object; *in order to* be, become, or *act as*; to *serve as*, or as part of; *in order to effect*. . . . (emphasis added). Under this primary definition, a silencer must actually "act" or "serve" the end of diminishing the report of a firearm, not merely have some subjective "purpose" without in fact acting or serving to diminish the report.  It must "effect" that end or goal.  Even the definition that most closely resembles Defendant's "purpose" interpretation reads: "With purpose or object of; adapted, appointed, or prerequisite to . . . ."  *Id*. (definition 2b).   But even under this definition, in addition to the purpose, a device for "diminishing the report of a firearm" must also be actually "adapted" to that object, or even "prerequisite" to achieving it.  Definition 2e defines "for" as "So as to *secure* or *conduce* to, in the way of *result*…." *Id*. (emphasis added).  Under this definition a device "for" diminishing the report of a firearm must actually secure that result, or at least conduce to that result.  In other words, the word "for" in the statute implies acting to, serving, or effecting the end of diminishing a firearm's report, being adapted to achieving that end, or securing or conducing to it.  It does not mean solely a subjective intention divorced from actually achieving the result, as Defendant would have it.

Second, although Defendant asserts that the purpose of the Stabilizer Brake is to diminish the report, that assertion is unsupported by the facts of the case.  As noted in Pl. S.J. Mem. 7, muzzle brakes are a common, legal firearms attachment, the purpose of which is to reduce recoil.  That is what the Stabilizer Brake is.  In its August 2, 2012, letter to ATF, Plaintiff stated that "Our stabilizer brake will not only reduce recoil, but it will also reduce flash, muzzle rise, and *will not cause an increase in the noise level* experienced by the shooter at the rear of the firearm." AR 1 (emphasis added). "Not causing an increase" is critically different from "diminishing." The August 2 letter to ATF further states:

> As you know, stabilizer brakes operate to reduce recoil by redirecting the combustion gases created from discharging a

> firearm. The disadvantages, however, are that stabilizer brakes often increase flash, reduce bullet velocity, and substantially increase the noise level experienced by the shooter. Our design eliminates the disadvantages associated with traditional stabilizer brakes.

*Id.* There is no evidence in the record that the Stabilizer Brake diminishes a firearm's report; it merely prevents an increase sometimes caused by other muzzle brake designs.

Third, if the purpose (not actual effect) of a device is dispositive, as Defendant contends, then on the record before this Court the Stabilizer Brake is incontrovertibly not a silencer. The purposes as stated by Plaintiff in the August 2 letter are to reduce recoil, reduce muzzle flash and rise, and prevent the *increase* in noise experienced by the shooter with other muzzle brakes. The administrative record is devoid of any statement that the purpose of the device is to diminish a firearm's report. Furthermore, Plaintiff affirmatively alleges in the Complaint that the "Stabilizer Brake does not reduce total sound," Cplt. ¶ 8, and nowhere in the Complaint is there any allegation regarding the device's purpose, only its effects. If "purpose" is the test, the undisputed facts of record show that the purpose of the Stabilizer Brake is simply to act as an effective muzzle brake, and summary judgment must be entered for Plaintiff.

Fourth, the Classification Letter does not rely on the alleged "purpose" of the Stabilizer Brake as the basis for its determination, so that theory cannot be urged here. FTB stated that "[our] silencer classifications are based *solely* upon the physical characteristics of the device under examination." AR 15 (emphasis added). Nothing was said about the device's alleged purpose. That argument did not appear until Defendant's Opening Brief.[8] As the D.C. Circuit has repeatedly held, "we cannot credit an agency counsel's presentation of a position not clearly adopted by the agency." (footnote omitted). *Checkosky v. Securities and Exchange Comm'n,* 23

---

[8] Def. Br. 13-14. Similarly, the related argument that the redirection of sound away from the shooter and toward the muzzle makes the purpose of the Stabilizer Brake that of diminishing the report was not relied upon in the Classification Letter, but appears for the first time in Defendant's Opening Brief. Def. Br. 9-10.

F.3d 452, 460 (D.C. Cir. 1994) (per curiam case; separate opinion of Judge Silberman) (citing *KN Energy, Inc. v. FERC*, 968 F. 2d 1295, 1303 (D.C.Cir.1992)).  Instead, "an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U. S. 29, 50 (1983) (emphasis added).  The "purpose" test is a classic, and impermissible, "post hoc rationalization of counsel." *Burlington Truck Lines,* 371 U.S. at 168.

### III.  IN THE CLASSIFICATION LETTER, DEFENDANT HAS FAILED TO EXAMINE RELEVANT DATA, AND HAS FAILED TO PROVIDE A REASONED EXPLANATION FOR THE DECISION.

ATF has no separate procedures or standards for examining silencers for non-evidentiary classification purposes, which is the relevant purpose here.  ATF has such non-evidentiary classification procedures and standards for firearms generally, for determining the importability of certain semi-automatic rifles and shotguns, for determining the importability of revolvers, for determining the importability of pistols, for test firing certain semi-automatics, for test firing "suspected" machine guns, and for other purposes. Def. Ex. 1, *Standard Operating Procedures: Examination of Non-Evidentiary Firearms Samples.*  But ATF has neglected to specify any standards or procedures for determining whether a device should be classified as a silencer for non-evidentiary purposes.  Def. Ex. 1.  In terms of direct application of an SOP, Defendant's review is entirely standardless.

To attempt to cure this defect, Defendant has asserted in his brief that for classification purposes FTB follows an SOP that applies to evidentiary examination of firearms.  He states that FTB "applies the procedural steps of receiving and analyzing a putative silencer under the Non-Evidentiary Samples SOP, but applies the substantive determinations of what constitutes a silencer from the SOP entitled, Evidence Examination of Silencers," referring to Def. Ex. 2. Def. Mem. 15 n.8.

Plaintiff noted in its opening brief that the list of features for silencers in the evidentiary SOP (Def. Ex. 2) differs significantly from the list recited in the Classification Letter.  Pl. S.J. Mem. 3, 18-19.  Defendant admits as much, but then offers a number of technical assertions, that are completely outside the record, that were not relied upon or explained in the Classification Letter, and that are impossible for this court to review.  For example, Plaintiff pointed out that the SOP lists "bleed holes" as a feature of silencers, whereas the Classification Letter does not. Pl. S.J. Mem. 19. Defendant opines that "The letter also does not list 'bleed holes,' although such holes are the 'ports' in the listed 'ported inner tube.'" Def. Reply 8-9. That may or may not be true.  Certainly, this court has no ability to tell on this record.  In fact, it appears *not* to be the case, since the SOP lists "bleed holes" as a factor separate from and *in addition to* a "ported tube." *Compare* Def. Ex. 2 par. 4.3.2.2 with par. 4.3.2.4.

Defendant also attempts to explain away the discrepancy between the lists regarding "wipes" by stating that "Plaintiff's device did not include wipes as part of its design, so the absence or inclusion of wipes as a possible internal feature of known silencer characteristics in the decision letter is moot…." Def. Reply 9.  But that would only be true if it were a foregone conclusion that the Stabilizer Brake would be classified as a silencer by FTB.  It may be that wipes are an integral and important feature of silencers, and that devices that do not have them, such as the Stabilizer Brake, are not likely to be silencers.  The Court certainly has no way of knowing this from the administrative record or any ATF regulation or publication, just as it has no way of knowing the importance or relevance of any of the other features that are listed either in the SOP (Def. Ex. 2) or in the Classification Letter.  The agency is required to give a reasoned decision that provides enough information for judicial review.  Later attempted explanations by litigation counsel, even when supported by Wikipedia citations about silencer designs during the

11

Vietnam era and thereafter, do not take the place of facts and reasoning contained in the agency determination itself.

Defendant attempts to supply the lack of reasoned explanation by contending: "FTB further explained why the SIRT was not conducted and gave advice to Plaintiff on how it may re-configure its device so to potentially avoid the silencer classification."[9]  Def. Reply 7-8.  But FTB did not "explain" *why* sound testing procedures and equipment were not conducted. Instead, it simply stated that it had the appropriate equipment, but did not use it for classification. No reason for why it was not used for classification was given.

Defendant contends that "ATF uses a 'purpose' based interpretation of § 921(a)(24) and found that those features [the three cited in the letter] have *a* purpose (even if not *the* purpose) 'for silencing, muffling, or diminishing' the report of a firearm."  Def. Reply 8.  But no "purpose based interpretation" is mentioned in the Classification Letter, or anywhere else in ATF regulations or documents that have been cited in this case.  Might not one or more of those three features legitimately appear as part of other devices that are not silencers (such as muzzle brakes)?  The Classification Letter does not say.  Are any of the six features listed in the Classification Letter but *not* present in the Stabilizer Brake essential (by themselves, or in combination with other parts) to make a device a silencer?  The Classification Letter does not reveal this information.  What is it about the particular three parts or the design of the Stabilizer Brake that makes it function as a silencer, in FTB's opinion?  Again, there is simply no discussion or reasoning why the three particular parts mentioned automatically make a device a silencer. The Classification Letter could just as easily have listed the six features, noted that the Stabilizer Brake had only three of them, and declared that therefore it is ***not*** a silencer.

---

[9] The FTB's "advice" was how to manufacture a completely different device, of a totally different construction, without the benefits of the Stabilizer Brake, for use for a different purpose (as a "flash hider" rather than as a muzzle brake).  That does not amount to a "reasoned explanation" of FTB's decision.

12

Indeed, Defendant asserts in his Reply that the presence of only two out of nine features listed in the evidentiary SOP (Def. Ex. 2) would suffice to classify a device as a silencer. Def. Reply 9. He also considers the lack of a "scoring system"—that is, the *lack of any objective standards*—to be "essential" to the process of classifying devices as silencers or not. *Id.* Be that as it may, that is not the approach the federal courts take in reviewing agency decisions.

The D.C. Circuit, in a case involving technical issues, has recently overturned a decision by ATF for its failure to articulate any objective standards or criteria regarding the issues, and its equal failure to provide a sufficiently reasoned explanation. *Tripoli Rocketry Ass'n v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 437 F.3d 75 (D.C. Cir. 2006). It is worth quoting at some length, because the arguments by ATF as to why it did not need to develop concrete standards, perform testing, or provide a reasoned explanation of its decision, are highly analogous to those in the case at bar. In *Tripoli Rocketry,* the court stated the relevant legal principles as applied to ATF's position as follows:

> This court routinely defers to administrative agencies on matters relating to their areas of technical expertise. We do not, however, simply accept whatever conclusion an agency proffers merely because the conclusion reflects the agency's judgment. In order to survive judicial review in a case arising under § 706(2)(A), an agency action must be supported by "reasoned decisionmaking." *Allentown Mack Sales & Serv., Inc. v. NLRB,* 522 U.S. 359, 374, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998) (quoting *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 52, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). "Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational. Courts enforce this principle with regularity when they set aside agency regulations which, though well within the agencies' scope of authority, are not supported by the reasons that the agencies adduce." *Id.* The problem in this case is that ATFE's explanation for its determination that APCP deflagrates lacks any coherence. We therefore owe no deference to ATFE's purported expertise because we cannot discern it. ATFE has neither laid out a concrete standard for classifying materials along the burn-deflagrate-detonate continuum, nor offered data

13

> specific to the burn speed of APCP when used for its "common or primary purpose." On this record, the agency's decision cannot withstand judicial review.

*Tripoli Rocketry*, 437 F.3d at 77. As in the case at bar, the Court found that "the agency seeks to invoke its institutional expertise as a licence for making unarticulated findings." *Id.* at 83. The Court observed that when faced "with a reasoned judgment about what conclusions to draw from technical evidence or how to adjudicate between rival scientific theories, we will not override an agency's discretion." *Id.* But, the Court noted, "where an agency has articulated no reasoned basis for its decision--where its action is founded on unsupported assertions or unstated inferences--we will not 'abdicate the judicial duty carefully to "review the record to ascertain that the agency has made a reasoned decision based on reasonable extrapolations from some reliable evidence."' *Am. Mining Cong. v. EPA,* 907 F.2d 1179, 1187 (D.C.Cir. 1990)." *Id.*

In *Tripoli Rocketry*, as here, the agency could have conducted testing and made particularized findings, but it did not. The Court noted that:

> ATFE insists that it had no burden to make more particularized findings. The agency concedes that it "certainly could have conducted experiments or otherwise researched burn rates specific to APCP used in model rocket motors to bolster its conclusion that APCP is capable of deflagration," but claims that "nothing in the OCCA or the APA required it to do so." ATFE's Br. at 15. Unsurprisingly, then, rather than resting on concrete evidence to support its judgment, ATFE simply points to evidence relating to the properties of "rocket propellants" and claims deference on the basis of its presumed technical expertise and experience. The purported evidence cited by the agency does not support its determination in this case, and the cry for deference is hollow.

*Id.* at 82.

It is black letter law that courts will hold agency actions arbitrary and capricious if the agency has failed to "examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made," *Motor*

14

*Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Here, the agency has not only failed to provide a reasoned explanation, but it has not considered the relevant data. Indeed, the Classification Letter omitted the most relevant fact of all: whether the Stabilizer Brake actually diminishes a firearm's report. In refusing to test the Stabilizer Brake, FTB also failed to follow its own procedures.

**IV.     THE AGENCY HAS FAILED TO FOLLOW ITS OWN PROCEDURES.**

The question in this case is whether the Stabilizer Brake is a device for silencing, muffling, or diminishing the report of a firearm. Section 921(a)(24) does not regulate "things that look like silencers" or "things that might have some features that are consistent with features of some silencers"—it regulates "silencers"

There is an easy way to determine that whether the Stabilizer Brake is a silencer or not. Test it. The results are objectively measurable by scientific instruments which the agency admittedly possesses, and has protocols for using. AR 15; Def. Ex. 2. The Standard Operating Procedures which Defendant purports to apply in this case also require it. Def. Ex. 2, pars. 4.3 *et seq.*, 5.0, and 5.1 *et seq*.

Plaintiff pointed out in its opening brief that Defendant failed to follow the sound impulse reduction testing mandated in the Evidentiary SOP, which Defendant claims to rely on for substantive determinations as to whether a device is a silencer. Pl. S.J. Mem. 20-21. In his Reply, Defendant responds by quoting portions of the introductory language relating to "Internal Examination" of the device, specifically certain sentences containing the word "may." Def. Reply 5-6. But Defendant fails to quote in its entirely the following highly pertinent—indeed dispositive—language:

> The FEO may disassemble the evidence for internal examination, but (except for safety reasons) disassembly *should always be preceded by* photography of the evidence (Section 4.4) and *a*

15

> *function test.* The FEO *will document* internal features, physical characteristics, and *any other information* which *directly affects* the classification of the evidence. These internal features, physical characteristics, and other information may include:
>
> 4.3.1   Sound Impulse Reduction Testing
>
> 4.3.2   Internal features
>
>   4.3.2.1 Baffles
>
>   4.3.2.2 Ported tube
>
>   Etc.

(emphasis added). It could hardly be clearer that all procedures under this section are "***always***" to be preceded by "a function test." "Function testing" is described under Par. 5.0 and 5.1, and the *only* function testing listed is "sound impulse reduction testing." As Defendant admits, the procedures under 5.0 and 5.1 are also all couched in mandatory terms. Def. Reply 6. Under this SOP, which Defendant purports to apply for substantive determinations, FTB was required to perform function testing but didn't.

It is also mandatory that the FEO "will" document all features, physical characteristics, and "any other information which directly affects the classification of the evidence." Def. Ex. 2 par. 4.3. Although the next sentence says that such features, characteristics, and information "may" include the items listed, the use of "may" is not just explainable, but inevitable: all of those features will not always be present, or may not be able to be documented. In fact, par. 4.3 states the only exception in which function testing (sound impulse reduction testing) is not required to be performed; namely, "for safety reasons." In all other instances, it should "always" be performed before disassembling the device for internal examination.[10]

---

[10] Plaintiff further notes that, even if the "always" language regarding function testing were not included, sound impulse reduction testing is exactly on a par with the physical examination on which Defendant attempts to rely exclusively. Plaintiff respectfully submits that whether a device actually reduces sound, as demonstrated by sound

Federal agencies are required "to follow their own rules, even gratuitous procedural rules that limit otherwise discretionary actions." *Steenholdt v. F.A.A.*, 314 F.3d 633, 639 (D.C. Cir., 2003); *see also Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1098 (D.C.Cir.1985) ("Courts, of course, have long required agencies to abide by internal, procedural regulations...."). Here, Defendant did not do so, and his actions cannot stand.

## **CONCLUSION**

The agency's decision must be reversed and set aside. Defendant's motions must be denied, and summary judgment should be entered for Plaintiff declaring that the Stabilizer Brake is not a silencer. In the alternative, the case should be remanded to ATF for further proceedings in accordance with law.

Respectfully submitted,

INNOVATOR ENTERPRISES, INC.
By counsel

/s/Dan M. Peterson
Dan M. Peterson PLLC
3925 Chain Bridge Road
Suite 403
Fairfax, VA 22030
(703) 352-7276
(703) 359-0938 (fax)
dan@danpetersonlaw.com

---

impulse reduction testing, is "information which directly affects the classification of the evidence" as a silencer or not. ATF certainly thought so by listing it under par. 4.3. Furthermore, as Defendant notes in his Reply, "Because the SOP is generally used for evidence for criminal proceedings, the mandatory nature of the procedures (once used) helps establish their credibility for forensic purposes." Def. Reply 6 n.7. It is difficult to imagine an FEO going into court and testifying that a device was a silencer, because he had looked at it, it had two or three characteristics out of nine or more that were "consistent with" some other silencers, and though he had the equipment to perform sound testing, he had not done so.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2013, I electronically filed the foregoing PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties through their counsel.

/s/Dan M. Peterson
Dan M. Peterson