**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **INNOVATOR ENTERPRISES, INC.** <br><br> **Plaintiff,** <br><br> v. <br><br> **B. TODD JONES, Director, United States Bureau of Alcohol, Tobacco, Firearms & Explosives,** <br><br> **Defendant.** | Civil Action No. 13-581 (JDB) |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Innovator Enterprises, Inc. ("Innovator") brings this action against B. Todd Jones, in his official capacity as the director of the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF" or "the agency").  Innovator brings two claims, seeking (1) to set aside agency action as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) ("APA"), and (2) a declaratory judgment that Innovator's product, the "Stabilizer Brake," is not a "firearm silencer," as defined by the National Firearms Act and the Gun Control Act of 1968, 18 U.S.C. § 921(a)(24).  Before the Court is [9] ATF's motion to dismiss and [9] [12] the parties' cross-motions for summary judgment.  For the reasons set forth below, the Court will deny ATF's motion to dismiss, grant in part and deny in part the parties' cross-motions for summary judgment, vacate the agency decision, and remand to ATF for further proceedings.

# BACKGROUND

## A.  Statutory Background

The National Firearms Act "imposes a registration requirement and a tax upon the manufacture and transfer of firearms," and the Gun Control Act of 1968 "criminalizes the illegal manufacture, transfer, and possession of firearms."  Def.'s Mot. to Dismiss or for Summ. J. ("Def.'s Mot.") [ECF No. 9] at 7.  The definition of a "firearm" under federal law includes "any firearm muffler or firearm silencer." 18 U.S.C. § 921(a)(3)(C).  Another provision of the Gun Control Act of 1968 offers additional clarity:

> The terms "firearm muffler" and "firearm silencer" mean any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.

18 U.S.C. § 921(a)(24).[1]  The National Firearms Act incorporates the Gun Control Act's definition by reference, defining the term "firearm" to include "any silencer (as defined in section 921 of Title 18, United States Code)."  26 U.S.C. § 5845(a)(7).  Any device that qualifies as a "firearm silencer"—that is, "any device for silencing, muffling, or diminishing the report of a portable firearm"—is subject to extensive federal registration and taxation.  A device that does not so qualify can be produced, marketed, and sold free from federal restraints, subject only to state regulations of varying severity.

## B.  Innovator's Stabilizer Brake

Innovator "designed and built a device it named a 'Stabilizer Brake,' which attaches to the muzzle of a rifle," and "substantially reduces recoil, reduces muzzle rise, and redirects noise away from the shooter toward the target."  Compl. [ECF No. 1] ¶ 8.  Typically, such devices,

---

[1] In this context, the word "report" refers to the sound of a gunshot.  See Webster's Third New Int'l Dictionary 1925 (1993) (defining "report" as "an explosive noise").

sometimes called "muzzle brakes," are used "to reduce recoil by redirecting combustion gases created from discharging a firearm."  Aug. 2, 2012 Letter from Innovator to ATF ("Whitney Letter"), Administrative Record [ECF No. 8-1] ("AR") at 1.  But such devices can have disadvantages.  Specifically, they "often increase flash, reduce bullet velocity, and substantially increase the noise experienced by the shooter."  Id.  Innovator claims to have perfected a design that eliminates those disadvantages, and that its Stabilizer Brake "will not only reduce recoil, but it will also reduce flash, muzzle rise, and will not cause an increase in the noise level experienced by the shooter at the rear of the firearm."  Id.  Innovator alleges that its "'Stabilizer Brake' does not reduce total sound, but increases sound at the front of the rifle and decreases sound at the shooter's position."  Compl. ¶ 8.

### C.  The Administrative Proceedings

On August 2, 2012, Innovator requested a "Classification Letter" from ATF for its Stabilizer Brake.[2]  See Whitney Letter, AR at 1.  Although Innovator's letter made no reference to silencers, Innovator alleges that the purpose of the request was "to determine whether [ATF] believed the 'Stabilizer Brake' to be a firearm muffler or firearm silencer within the meaning of 18 U.S.C. § 921(a)(24)."  Compl. ¶ 9.   Innovator's submission included a sample of the device and diagrams showing how the Stabilizer Brake functions.  See AR 2-7.

About six weeks later, ATF issued its response in the form of a letter from John R. Spencer, the Chief of ATF's Firearms Technology Branch ("FTB").  Sept. 14, 2012 Letter from ATF to Innovator ("Classification Letter"), AR at 14-15.  The Classification Letter concluded

---

[2]  The record does not make clear whether the practice of requesting a Classification Letter is required before selling a device like Innovator's, or whether it is simply a helpful service offered by the agency to assist regulated parties in complying with the law.  At oral argument, government counsel represented that such a request is optional.  See Hr'g Tr. at 22-24 ("[T]here is no statute or regulation that required plaintiff to submit its device.").

that Innovator's Stabilizer Brake "meets the definition of 'firearm silencer' specified in 18 U.S.C. § 921(a)(24)." Id. at 15. After an introductory paragraph and statutory references, the letter states as follows:

> When evaluating a particular item as a potential silencer, FTB looks specifically for physical characteristics that are consistent with those of known firearm silencers. These characteristics include (but are not limited to):
>
> - Ported inner tube(s).
> - Expansion chambers.
> - Baffles or washers which create separate expansion chambers.
> - Sound-dampening material such as foam, steel wool, and other materials.
> - End caps.
> - Encapsulators.
>
> Although FTB utilizes state-of-the-art sound metering equipment to **demonstrate** that various items are capable of reducing the report of a portable firearm, these tests do not affect the classification of any item. Our silencer classifications are based solely upon the physical characteristics of the device under examination.
>
> With respect to your submitted device, the FTB examination found that it incorporates an expansion chamber, a ported inner tube, and an end cap, which are characteristics of known firearm silencers. Therefore, FTB finds that this item meets the definition of "firearm silencer" specified in 18 U.S.C. § 921(a)(24).
>
> Also, as you may be aware, the Bulgarian four-piece flash hider has been previously classified by FTB as a flash hider. If the design and dimensions of your submitted device were modified to replicate those of the Bulgarian four-piece flash hider (photo also enclosed), we would conduct a further evaluation of the modified item.

Classification Letter, AR 14-15 (emphasis in original). Innovator filed its federal complaint about six months later, seeking (1) an order to set aside FTB's determination that the Stabilizer Brake is a "firearm silencer" as "arbitrary and capricious, and not in accordance with law" under the APA, Compl. ¶ 23, and (2) a declaratory judgment that the Stabilizer Brake is not a "firearm silencer," Compl. ¶ 13.

## LEGAL STANDARDS

### A.  Motion To Dismiss For Failure To State A Claim

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" such that the defendant has "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must supply "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to provide the "grounds" of "entitle[ment] to relief." Twombly, 550 U.S. at 555-56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). Instead, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Twombly, 550 U.S. at 570); Atherton v. Dist. of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).  A complaint is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  This amounts to a "two-pronged approach," under which a court first identifies the factual allegations that are entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 679.

### B.  Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In a case

involving review of final agency action under the APA, however, the standard set forth in Rule 56(a) does not apply because of the limited role of a court in reviewing the administrative record. See Loma Linda Univ. Med. Ctr. v. Sebelius, 684 F. Supp. 2d 42, 52 (D.D.C. 2010) (citing Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89 (D.D.C. 2006), aff'd, 408 Fed. App'x 383 (D.C. Cir. 2010)); see also Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001) ("[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal.  The entire case on review is a question of law.") (footnote and internal quotation marks omitted).  Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  See Occidental Eng'g Co. v. INS, 753 F.2d 766, 769-70 (9th Cir. 1985).  Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.  See Richards v. INS, 554 F.2d 1173, 1177 & n. 28 (D.C. Cir. 1977).

## C.  The Administrative Procedure Act

The APA requires that the Court "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The "scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  The Court must be satisfied that the agency has "'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the

facts found and the choice made.'"  Alpharma, Inc. v. Leavitt, 460 F.3d 1, 6 (D.C. Cir. 2006)

(quoting State Farm, 463 U.S. at 43).  The agency's decisions are entitled to a "presumption of

regularity," Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971), and

although "inquiry into the facts is to be searching and careful, the ultimate standard of review is a

narrow one," id. at 416.  Federal courts are particularly deferential towards the "'scientific

determinations'" of the agency, which are "presumed to be the product of agency expertise."

Franks v. Salazar, 816 F. Supp. 2d 49, 55 (D.D.C. 2011) (quoting Balt. Gas & Elec. Co. v.

Natural Res. Def. Council, Inc., 462 U.S. 87, 103 (1983)) (alteration omitted).  The Court's

review is confined to the administrative record, subject to limited exceptions not at issue here.

See Camp v. Pitts, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the

administrative record already in existence, not some new record made initially in the reviewing

court.").

## ANALYSIS

In any agency review case, a reviewing court is generally obligated to uphold a

reasonable agency decision that is the product of a rational agency process.  This is not a high

bar.  But in this case, ATF fails to clear it.  Because ATF "failed to articulate a satisfactory

explanation" and "failed to examine the relevant data" in classifying the Stabilizer Brake as a

"firearm silencer," the Court will vacate the agency decision and remand for further proceedings.

### I.  The Classification Letter Is Not Entitled To Chevron Deference

ATF argues that "when courts review legal challenges to an agency's interpretation of a

statute it administers, they must use the two-part test adopted by the Supreme Court in Chevron,

USA, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984)."  Def.'s

Mot. at 11.  Although the general principle is accurate, it does not apply here.  The Classification

Letter does not qualify for Chevron deference.

### A.  The Barnhart standard determines whether Chevron deference is owed to informal agency action.

Since the landmark Chevron decision, the Supreme Court has limited the doctrine's

applicability on several occasions.  Most importantly, in United States v. Mead Corp., 533 U.S.

218 (2001), the Supreme Court introduced a threshold inquiry to determine whether the two-

step[3] Chevron analysis is applicable to the agency action in question.  See Mead, 533 U.S. at

226-27 ("We hold that administrative implementation of a particular statutory provision qualifies

for Chevron deference when it appears that Congress delegated authority to the agency generally

to make rules carrying the force of law, and that the agency interpretation claiming deference

was promulgated in the exercise of that authority.").  For agency actions that fail this threshold

analysis, the agency still may receive Skidmore deference, under which the agency interpretation

is entitled to "respect," but only to the extent that it has the "power to persuade."  Id. at 235

(quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

The most recent Supreme Court decision applying Mead is Barnhart v. Walton, 535 U.S.

212 (2002).  In Barnhart, the Supreme Court held that an interpretation of the Social Security Act

by the Commissioner of the Social Security Administration was entitled to Chevron deference.

But most importantly, it recast the Mead analysis—which had seemingly looked only to the

formality of agency procedures—as a multi-factor balancing test:

> In this case, the interstitial nature of the legal question, the related expertise of the
> Agency, the importance of the question to administration of the statute, the

---

[3] See Chevron, 467 U.S. at 842-43 ("First, always, is the question whether Congress has spoken directly to the precise question at issue. . . . [I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.").

> complexity of that administration, and the careful consideration the Agency has given the question over a long period of time all indicate that <u>Chevron</u> provides the appropriate legal lens through which to view the legality of the Agency interpretation here at issue.

<u>Barnhart</u>, 535 U.S. at 222.  The D.C. Circuit has recently confirmed that <u>Barnhart</u> now supplies the determinative analysis at <u>Chevron</u> step zero.  <u>See</u> <u>Fox v. Clinton</u>, 684 F.3d 67, 77 (D.C. Cir. 2012).

### B. The Classification Letter fails the <u>Barnhart</u> test, so <u>Chevron</u> does not apply.

The Classification Letter is a brief and informal document.  It contains hardly any reasoning, and makes no reference to prior agency regulations or interpretations that support its conclusion.  The letter appears to be a non-binding statement of the agency's position on whether the Stabilizer Brake is a silencer, which will not bear the force of law as applied in future classifications of different devices.  And the relevant legal question presents a fairly conventional statutory interpretation issue, of the sort that courts have equal—if not greater—institutional competence in resolving.  Hence, the Classification Letter fails the <u>Barnhart</u> test, and should only receive <u>Skidmore</u> deference.

#### 1. The Interstitial Nature of the Legal Question

The relevant "legal question" under <u>Barnhart</u> is whether Innovator's "Stabilizer Brake" is a "firearm silencer" under federal law; in other words, whether the Stabilizer Brake is a device for "diminishing the report" of a firearm.  This is a straightforward question of statutory interpretation; there is nothing "interstitial" about it.  The Court need not consider its applicability or overlap to other statutory or regulatory provisions.  This is the sort of conventional statutory interpretation question for which courts are equally—if not more—

capable of coming to a sensible conclusion.   This consideration weighs against <u>Chevron</u> deference.

### 2. The Related Expertise of the Agency

The Firearms Technology Branch of ATF has expertise in classifying firearms and firearm silencers—much more so than the Court.   When considered at this high level of generality, FTB's expertise weighs in favor of deference.   But here, the Court has real concerns that FTB has not applied its expertise to the question at hand: specifically, by refusing to use what it describes as "state-of-the-art sound metering equipment" to actually test the Stabilizer Brake and, instead, making its decision "based solely upon the physical characteristics of the device."   Classification Letter, AR at 15.   As will be discussed in greater detail below, <u>see</u> <u>infra</u> Section II.B, this failure to take advantage of agency expertise weighs against deference.   That said, FTB still has expertise in examining "the physical characteristics" of a putative silencer, so, on the whole, this factor weighs slightly in favor of <u>Chevron</u> deference.

### 3. The Importance of the Question to Administration of the Statute

Classifying one particular device as a "firearm silencer" is a relatively unimportant question in the grand scheme of federal firearm regulations.   Indeed, it is difficult to determine what exactly Congress was concerned about in deciding to regulate silencers at the federal level. <u>See, e.g.</u>, P. Clark, <u>Criminal Use of Firearm Silencers</u>, 8 W. CRIM. REVIEW 44, 48 (2007) ("The 1934 congressional debates [over what became the National Firearms Act] provide no explanation about why silencers were licensed.").   In other words, the stakes here are low.   This weighs against <u>Chevron</u> deference.

### 4. The Complexity of that Administration

Although the regulatory scheme surrounding <u>known</u> silencers is somewhat complex, <u>classifying</u> putative silencers is a simple task.  The agency need only examine a sample of the device and determine whether it is a device "for diminishing the report of a portable firearm."  This too weighs against <u>Chevron</u> deference.

### 5. The Careful Consideration the Agency has Given the Question Over a Long Period of Time

The agency appears to have given extremely light consideration to this question.  The Classification Letter (issued six weeks after Innovator's initial request) is just over a page long, and contains only a few short paragraphs of actual reasoning.  Even those paragraphs, as will be discussed further below, <u>see</u> <u>infra</u> Section II, contain little more than conclusory assertions and head-scratching revelations about the process that FTB uses to classify silencers.  The agency has no formal guidance or written procedure for classifying silencers.  This factor, then, weighs strongly against <u>Chevron</u> deference.

\*      \*      \*

For these reasons, the Court need not defer under <u>Chevron</u> to the agency decision embodied by the Classification Letter.  This conclusion is supported by Supreme Court and D.C. Circuit precedents, which have consistently refused to extend <u>Chevron</u> deference to the fruits of informal adjudications that appear in the form of brief, informal, and non-precedential classification letters or ruling letters.  <u>See, e.g.</u>, <u>Mead</u>, 533 U.S. at 224, 234 ("Most [U.S. Customs Tariff Classification] ruling letters contain little or no reasoning, but simply describe goods and state the appropriate category and tariff.  A few letters, like the Headquarters ruling at issue here, set out a rationale in some detail. . . . In sum, classification rulings are best treated like interpretations contained in policy statements, agency manuals, and enforcement guidelines.

They are beyond the Chevron pale.") (internal citation omitted); Christensen v. Harris Cnty., 529 U.S. 576, 587 (2000) ("[W]e confront an interpretation contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking. Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant Chevron-style deference."); Fox, 684 F.3d at 78 ("[T]here is nothing in [a State Department Ruling Letter] to give deference to. . . . [T]he department offered little more than uncited, conclusory assertions of law in a short, informal document that does not purport to set policy for future [nationality] determinations.").

To be sure, there are some circumstances in which Chevron deference is owed to the fruits of an agency's informal adjudication.  See Mylan Labs., Inc. v. Thompson, 389 F.3d 1272, 1280 (D.C. Cir. 2004) (deferring to an FDA letter interpreting the Federal Food, Drug, and Cosmetic Act, noting "the complexity of the statutory regime," "the FDA's expertise," "the careful craft of the scheme [FDA] devised to reconcile the various statutory provisions," and that "the FDA's decision made no great legal leap but relied in large part on its previous determination of the same or similar issues and on its own regulations").  But here, when faced with a "short, informal document" that contains "little more than uncited, conclusory assertions of law," Fox, 684 F.3d at 78, and no relevant agency regulations, the Court will apply only Skidmore deference.  See Mead, 533 U.S. at 235 (holding that "Chevron did nothing to eliminate Skidmore's holding that an agency's interpretation may merit some deference whatever its form," to the extent that interpretation has the "power to persuade").  And under Skidmore, the Court need only defer to "persuasive" agency interpretations.

## II.  **The Agency Action Is Arbitrary And Capricious**

ATF's decision to classify the Stabilizer Brake as a "firearm silencer" is "arbitrary and capricious" for at least two reasons: (1) the agency failed to "articulate a satisfactory explanation" for its decision, and (2) the agency failed to "examine the relevant data" before coming to a final conclusion.  For these reasons, the agency action was "arbitrary and capricious," and must be set aside under the APA.[4]

### A.  **The agency failed to "articulate a satisfactory explanation" for its decision.**

The agency decision in this case is embodied by the Classification Letter, which contains very little reasoning or analysis.  The entire substance of the agency's justification for classifying Innovator's Stabilizer Brake as a "firearm silencer" is contained in the following three paragraphs:

> When evaluating a particular item as a potential silencer, FTB looks specifically for physical characteristics that are consistent with those of known firearm silencers.  These characteristics include (but are not limited to):
>
> - Ported inner tube(s).
> - Expansion chambers.
> - Baffles or washers which create separate expansion chambers.
> - Sound-dampening material such as foam, steel wool, and other materials.
> - End caps.
> - Encapsulators.
>
> Although FTB utilizes state-of-the-art sound metering equipment to **demonstrate** that various items are capable of reducing the report of a portable firearm, these tests do not affect the classification of any item.  Our silencer classifications are based solely upon the physical characteristics of the device under examination.
>
> With respect to your submitted device, the FTB examination found that it incorporates an expansion chamber, a ported inner tube, and an end cap, which

---

[4]  As discussed above, only Skidmore deference is owed here.  Because the agency decision does not have the "power to persuade," the Court will not defer to the agency's conclusion.  But even if Chevron's more deferential standard applied, the flaws in the agency's decision-making process would have led to the same result.

> are characteristics of known firearm silencers.  Therefore, FTB finds that this item
> meets the definition of "firearm silencer" specified in 18 U.S.C. § 921(a)(24).

Classification Letter, AR at 14-15.  This is not a "satisfactory explanation" for the agency decision, because the agency's methodology for deciding whether a particular device is "for diminishing the report of a portable firearm," 18 U.S.C. § 921(a)(24), is deeply flawed.

As a general matter, relying "<u>solely</u> on the physical characteristics of the device," Classification Letter, AR at 15 (emphasis added), is a flawed method for classifying putative silencers.  To be sure, physical characteristics may be one important factor.  But basing a decision "solely" on such characteristics has the potential to be significantly overinclusive or underinclusive.  For example, imagine a device designed for the sole purpose of muffling all sound emitted by a gunshot, and that was 100% effective at doing so—in other words, the world's greatest silencer.  If this device relied on a novel or innovative design that did not contain many "physical characteristics" that are "characteristics of known firearm silencers," Classification Letter, AR at 15, the agency would apparently not classify it as a silencer—despite the fact that it eliminates all noise produced by a gunshot.  By the same token, Innovator claims to have invented a "Stabilizer Brake" for the purpose of reducing recoil, which happens to have three physical characteristics in common with those of "known silencers."  But that does not mean that the Stabilizer Brake is actually capable of (or designed for) "diminishing the report of a portable firearm," 18 U.S.C. § 921(a)(24), which is the analysis the agency is supposed to be performing under the statute.

Even if this general approach of relying "solely" on physical characteristics were sound, the agency did not perform a scientific or rigorous comparison of physical characteristics. Instead, it consulted a list of six characteristics that are allegedly common to "known silencers," and then, if the submitted device has some (unstated) number of those characteristics (here, three

out of six was enough), it is a "firearm silencer."  But where did that list of six characteristics come from?  The agency never explains whether those six characteristics are present in all (or most?) silencers.  The agency never explains whether there are other common characteristics that do not appear on its list.  And the agency never explains how many characteristics in common are necessary to be classified as a "firearm silencer."  What if a device has an "encapsulator" and an "end cap"—is it a silencer?  What about a device that is attached to the muzzle of a rifle, and is full of "sound dampening material," but has none of the other five physical characteristics—is it a silencer?  The agency's approach leaves Innovator (as well as other regulated parties, and reviewing courts) guessing.

Hypotheticals further illustrate the weakness of this methodology.  A mouse is not an "elephant" solely because it has three characteristics that are common to known elephants: a tail, gray skin, and four legs.  A child's bike is not a "motorcycle" solely because it has three characteristics common to known motorcycles: two rubber tires, handlebars, and a leather seat. And a Bud Light is not "Single-Malt Scotch," just because it is frequently served in a glass container, contains alcohol, and is available for purchase at a tavern.  To close with a firearm-related example: a hockey puck is not a "rubber bullet," just because it has rounded sides, is made of vulcanized rubber, and is capable of causing injury when launched at high speeds. Learning that one object has three characteristics in common with some category may not be very helpful in determining whether the object in question belongs in that category.

To make matters worse, other agency guidance uses a different list of characteristics—the six characteristics in the Classification Letter appear not to be an exhaustive, definitive list. Compare Classification Letter, AR at 14 (ported inner tube(s); expansion chambers; baffles or washers which create separate expansion chambers; sound-dampening material such as foam,

steel wool, and other materials; end caps; encapsulators), <u>with Standard Operating Procedures: Evidence Examination of Silencers</u>, Ex. 2 to Def.'s Mot. at 7-8 (baffles; ported tube; wipes; bleed holes; expansion chambers; baffling material).  This would still be a questionable approach if the agency used a list of six definitive and well-supported characteristics.  But the fact that the agency does not even have a clear position on what characteristics are common to known silencers further undercuts the legitimacy of this method.

For these reasons, the agency has failed to "articulate a satisfactory explanation," <u>State Farm</u>, 463 U.S. at 43, for its decision to classify Innovator's Stabilizer Brake as a "firearm silencer."  Therefore, the decision must be set aside as "arbitrary and capricious" under the APA.

### B.  The agency failed to "examine the relevant data."

The agency also failed to "examine the relevant data," which is an independent basis for setting aside agency action.  <u>State Farm</u>, 463 U.S. at 43.  Specifically, the agency made no effort to determine whether Innovator's Stabilizer Brake is actually capable of "diminishing the report" of a gunshot.

The most curious paragraph in the Classification Letter is as follows, in which the agency candidly admits it <u>could have</u> actually tested Innovator's Stabilizer Brake to determine how it affects the "report" of a gunshot, but did not do so:

> Although FTB utilizes state-of-the-art sound metering equipment to **demonstrate** that various items are capable of reducing the report of a portable firearm, these tests do not affect the classification of any item.  Our silencer classifications are based solely upon the physical characteristics of the device under examination.

Classification Letter, AR at 15 (emphasis in original).  This passage is an admission by the agency that it is capable of coming to a definitive, scientific determination—using what it describes as "state-of-the-art sound metering equipment"—of whether a device is capable of

"diminishing the report" of a firearm.  What is missing is a helpful explanation as to <u>why</u> it did not do so.

The Classification Letter makes an odd reference to using this sound-metering equipment "to demonstrate that various items are capable of reducing the report of a portable firearm," <u>id.</u> (emphasis omitted)—as if that is a task wholly unrelated to classification of a firearm silencer. Government counsel explains this passage as being a reference to the FTB policy of using sound-metering equipment only for the purpose of analyzing <u>evidentiary submissions</u> of silencers, rather than requests for <u>classification</u> of putative silencers.  <u>See</u> Def.'s Mot. at 2 ("FTB also has sound-monitoring equipment that it can use to demonstrate the <u>effectiveness</u> of a silencer; however, sound tests are not used to <u>classify</u> a silencer as such.").  Taking ATF's counsel at his word—even though this explanation appears nowhere in the Classification Letter itself, <u>see</u> <u>State Farm</u>, 463 U.S. at 50 ("[A]n agency's action must be upheld, if at all, on the basis articulated by the agency itself.")—this does not seem like a very sensible policy.  If FTB has "state-of-the-art sound metering equipment" that can scientifically determine whether "various items are capable of reducing the report of a portable firearm," Classification Letter, AR at 15, then it should use that equipment when classifying silencers—or, at the very least, explain why doing so is not necessary.  After all, the only question the agency is faced with when asked to classify a putative silencer is whether that device is "for diminishing the report of a portable firearm."  18 U.S.C. § 921(a)(24).

Assuming some rational reason exists to leave this "state-of-the-art" equipment on the shelf for classifications of silencers—even though the agency apparently uses it regularly for evidentiary submissions—the agency has not articulated one.  For that reason alone, the agency

action must be set aside as "arbitrary and capricious," due to the agency's "failure to consider the relevant data."  State Farm, 463 U.S. at 43.

ATF's only response is to suggest that testing Innovator's Stabilizer Brake would provide no useful information, because it is not "legally relevant," Hr'g Tr. at 25, whether sound is actually diminished by a putative silencer.  In other words, ATF argues that the "effectiveness" of a device as a silencer is irrelevant to its classification, and the "purpose" of the device is dispositive.  See Def.'s Opp'n & Reply [ECF Nos. 13 & 14] at 6 ("Congress used 'for . . . diminishing' as the operative language in the statute, so the effectiveness is not a relevant data point to consider.").  Put another way, ATF argues that knowing whether the device actually diminishes the report of a portable firearm is irrelevant to determining whether the device is "for diminishing the report of a portable firearm."  18 U.S.C. § 921(a)(24).  It marshals an example in support of this "purpose" interpretation: a pillow might have some mild success at "diminishing the report" of a firearm, and "[b]ecause it could be an effective silencer, then Plaintiff's interpretation would lead to the absurd conclusion that pillows were silencers . . . thus requiring a special NFA license to manufacture or possess them and requiring the payment of a tax."  Def.'s Opp'n & Reply at 6-7.

ATF's "purpose" argument fails for several reasons.  Most obviously, it is contradicted by the Classification Letter itself, which declares that "silencer classifications are based solely upon the physical characteristics of the device under examination."  Classification Letter, AR at 15 (emphasis added).  And the letter contains no hint that the agency considered "purpose" at all. Agency action may not be upheld on a basis that is inconsistent with the reasoning "articulated in

the order by the agency itself." <u>Burlington Truck Lines, Inc. v. United States</u>, 371 U.S. 156, 169 (1962). [5]

Even if the purpose of a device is relevant to determining whether it is "for diminishing the report" of a gunshot—and it very well may be—that does not lead to the conclusion that the government seeks: that the device's actual effectiveness as a silencer is totally irrelevant.  To use an example, a regulation might define a "space heater" as a device "for increasing the amount of heat" in a room.  In determining whether a certain device was a "space heater," one fact that a rational agency would surely consider was whether the device actually gave off any heat.  On the contrary, if the agency knew that a certain device was incapable of emitting heat, that should certainly <u>affect</u> the agency's conclusion as to whether that device was a space heater.  ATF may be right that a device's purpose is relevant to classifying it—especially when the statute uses the word "for"—but that does not mean that the device's effectiveness or capabilities are irrelevant.

As an effective rebuttal to ATF's "pillow" example, Innovator responds with the "pink silk ribbon" hypothetical.  If, as ATF asserts, the only relevant question to classifying a silencer

---

[5] For the same reason, the Court owes no deference to this "purpose" interpretation—it is not an authoritative agency interpretation, as it has never appeared in any regulation, interpretive rule, or other agency guidance.  There is no reason to think "it reflects the agency's fair and considered judgment on the matter." <u>Nat'l Wildlife Fed'n v. Browner</u>, 127 F.3d 1126, 1129 (D.C. Cir. 1997) (internal quotation marks omitted).  In other words, it is nothing more than the litigating position of the Department of Justice—a post-hoc rationalization by counsel, appearing for the first time in the briefs in this case.  No deference is owed to such an interpretation. <u>See, e.g.</u>, <u>Martin v. Occupational Safety & Health Review Comm'n</u>, 499 U.S. 144, 156-57 (1991) ("Our decisions indicate that agency 'litigating positions' are not entitled to deference when they are merely appellate counsel's 'post hoc rationalizations' for agency action, advanced for the first time in the reviewing court.  Because statutory and regulatory interpretations furnished in this setting occur after agency proceedings have terminated, they do not constitute an exercise of the agency's delegated lawmaking powers.") (internal citations omitted); <u>Bowen v. Georgetown Univ. Hosp.</u>, 488 U.S. 204, 212 (1988) ("[W]e have declined to give deference to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question, on the ground that Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands.") (internal quotation marks omitted).

is its purpose, than a pink silk ribbon tied in a bow around the barrel of a rifle could be a "firearm silencer"—as long as the ribbon's (delusional) inventor designed the ribbon with the hopes that it could be used "for diminishing the report" of a gunshot.  This illustrates the dangers of a regulatory definition that turns on the subjective purpose of the inventor.[6]  In most cases, including this one, a much more useful data point is the device's actual capabilities.

Finally, even if ATF's "purpose" interpretation were viable, remand would still be required, because the "purpose" of Innovator's Stabilizer Brake is not "for diminishing the report" of a portable firearm.  The agency asserts that "Plaintiff created this device 'for' the purpose of 'diminishing' the report of the firearm from the shooter's perspective."  Def.'s Mot. at 9 (citing Compl. ¶ 8 (the Stabilizer Brake "redirects noise away from the shooter")).  But the qualifier "from the shooter's perspective" is critical.  The agency's "purpose" interpretation asks whether the device was designed for the purpose of "diminishing the report of a portable firearm"—not whether it redirects sound away from the shooter.  And the statute says nothing about the direction of sound.  A bullhorn might redirect noise away from a speaker's mouth, but nobody would say it was for "diminishing" the sound produced by the speaker—just the

---

[6] In its briefs, ATF suggested that the "purpose" of the Stabilizer Brake could be determined based on Innovator's complaint and its submissions to the agency.  See, e.g., Def.'s Mot. at 9.  For the first time at oral argument, counsel offered a modified version of the "purpose" interpretation, suggesting that the agency determines the "purpose" of the device by examining its physical characteristics.  See Hr'g Tr. at 10-11.  The Court will not consider this argument, because it was raised for the first time at oral argument.  United States v. Southerland, 486 F.3d 1355, 1360 (D.C. Cir. 2007) ("Because this argument was raised for the first time at oral argument, it is forfeited."); accord Hwang Geum Joo v. Japan, 172 F. Supp. 2d 52, 56 n.2 (D.D.C. 2001).  But even if it had been raised in ATF's motion, no support for this approach can be found in the Classification Letter, making this yet another post-hoc rationalization of counsel that cannot sustain the agency decision.  See State Farm, 463 U.S. at 50 ("It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.").

opposite.[7]  The ATF's briefs treat redirection of sound as if it were equivalent to "diminishing" total sound, despite the counterintuitive nature of such an interpretation, and the fact that it is not supported by any statement from the agency itself.  See also Webster's Third New Int'l Dictionary 634 (1993) (defining "diminish" as "to make less or cause to appear less" or to "reduce in size, number or degree").[8]

Instead, to the extent the "purpose" of Innovator's Stabilizer Brake is relevant, the Court should look to the administrative record and the complaint.  Both suggest that the purpose of the Stabilizer Brake is not "for diminishing the report" of a gunshot.  Innovator's letter requesting classification explains that Innovator's "design eliminates the disadvantages associated with traditional stabilizer brakes," because Innovator's device "will not only reduce recoil, but it will also reduce flash, muzzle rise, and will not cause an increase in the noise level experienced by the shooter at the rear of the firearm."  Whitney Letter, AR at 1.  This letter suggests the true purpose of the Stabilizer Brake is to reduce recoil, muzzle flash, and muzzle rise, all while not causing an "increase" in noise level and thereby "eliminat[ing] the disadvantages associated with traditional stabilizer brakes."  Id.  But not increasing the noise level is not the same thing as decreasing (or "diminishing") the noise level.  And the allegations of the complaint confirm that the "purpose" of the Stabilizer Brake is not "diminishing the report" of a gunshot.  Compl. ¶ 13 ("Contrary to FTB's position, the 'Stabilizer Brake' is not a firearm muffler or firearm silencer . . .

---

[7] "Nobody" might be too strong a word.  See Hr'g Tr. at 47-48 (counsel defending the position that a bullhorn "diminishes" sound because it redirects noise away from the speaker).

[8] Discerning a clear Congressional purpose for federal silencer regulation is challenging.  But presumably, for whatever reason, Congress was concerned that a silencer could enable a shooter to evade detection by muffling the sound of a gunshot—after all, that is the only thing accomplished by an effective silencer.  The "redirection" theory is at cross-purposes with this goal.  The Stabilizer Brake allegedly increases noise in the direction of the target, and reduces noise only from the shooter's perspective.  Compl. ¶ 8.  So the Stabilizer Brake would presumably increase the likelihood that the target (or others) would hear a gunshot, and that the shooter would be detected.

because it is not a device for silencing, muffling, or diminishing the report of a portable firearm; it merely increases sound at the front of the rifle and decreases sound at the shooter's position.") (emphasis omitted).[9]

So even if the "purpose" of a device is determinative in deciding whether it is "for diminishing the report of a portable firearm," Innovator's Stabilizer Brake fails that test.  Hence, under any interpretation, the agency action should be set aside: either because effectiveness is at least a relevant data point that the agency must consider (or articulate some explanation for its failure to do so), or because the purpose of the Stabilizer Brake is not "for diminishing the report of a portable firearm." 18 U.S.C. § 921(a)(24).[10]

### III.  <u>The Proper Remedy Is To Remand To The Agency</u>

By granting summary judgment in favor of Innovator on its APA claim, the Court holds only that the agency action must be set aside as "arbitrary and capricious" under the APA, due to ATF's failure to "articulate a satisfactory explanation" and "examine the relevant data" in classifying Innovator's Stabilizer Brake as a "firearm silencer."  That is not the same thing as actually holding that the Stabilizer Brake is not a silencer.  The Court does not have enough information to determine whether the Stabilizer Brake is or is not a silencer; nor is it the Court's

---

[9] Although the complaint and the administrative record are a more reliable source of such factual information, Innovator's cross-motion for summary judgment also supports this understanding of the "purpose" of the Stabilizer Brake.  <u>See</u> Pl.'s Opp'n & Cross Mot. for Summ. J. [ECF No. 12] at 6-7 ("[N]ot all devices that attach to the end of a firearm barrel are silencers.  Indeed, most are not.  There are many types of devices that either may be attached to the end of a firearm barrel . . . that are perfectly legal, that are not silencers, that are not regulated at the federal level, and that do not require registration or payment of a tax under the NFA.  One common example is a muzzle brake, which is what the Stabilizer Brake is."); <u>see also</u> <u>Vais Arms, Inc. v. Vais</u>, 383 F.3d 287, 288 n.1 (5th Cir. 2004) ("A muzzle brake is a device attached to the muzzle (exit end) of a gun barrel to reduce perceived recoil and barrel 'bounce' that occurs when the gun is fired.").

[10] In light of these conclusions, the Court need not consider Innovator's alternative argument that the agency failed to follow its own procedures in classifying the Stabilizer Brake.

responsibility to do so.  The duty of making that determination—using a rational process—lies with the agency in the first instance.  <u>See, e.g.</u>, <u>Fox</u>, 684 F.3d at 80 ("[T]here may be sensitive issues lurking that are beyond the ken of the court.  The [agency], not the court, has the authority, discretion, and presumed expertise to act in the first instance to address matters within its domain of authority . . . , subject of course to appropriate judicial review.").  At oral argument, Innovator's counsel conceded as much, and essentially withdrew Innovator's request for a declaratory judgment.  <u>See</u> Hr'g Tr. at 47 ("[P]robably the appropriate remedy is a remand to the agency.").  The Court "will therefore pursue a course of prudence, following the path taken by the [D.C. Circuit] in" a long series of agency review decisions, "remand the case to the [agency] for reconsideration," <u>Fox</u>, 684 F.3d at 80, and deny Innovator's declaratory judgment claim.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court will deny ATF's motion to dismiss, grant in part and deny in part the parties' cross-motions for summary judgment, and remand to the agency for further proceedings.  A separate Order will issue on this date.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated:  <u>March 19, 2014</u>